IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LLOYD NEIL POPE, )<br>)<br>Plaintiff, )<br>)<br>) CIV-07-1333-F<br>v. )<br>)<br>DAVID MILLER, et al., )<br>)<br>Defendants. ) | |

SECOND SUPPLEMENTAL REPORT AND RECOMMENDATION

Plaintiff, a state prisoner appearing *pro se* and *in forma pauperis*, filed this civil rights action pursuant to 42 U.S.C. §1983. In his Complaint filed November 27, 2007, Plaintiff asserts that he is incarcerated at the Lawton Correctional Facility ("LCF"), a private prison in Oklahoma, and that the conditions of his confinement at LCF have denied him constitutional rights. As relief, Plaintiff seeks damages as well as his release from confinement and "a lawyer [to] help me with what I need to get me exonerated off this charge...." Complaint, at 5. The Defendants named in the Complaint are LCF Warden David Miller, LCF law library supervisor Floyd Fry, LCF "Sgt." Meade, LCF food supervisor Mr. Hancock, LCF medical director Ms. Halverson, LCF facility physician Dr. Edwin Carns, and LCF unit manager Mr. Underwood.

The matter was referred to the undersigned Magistrate Judge for initial proceedings

consistent with 28 U.S.C. §636(b)(1)(B), and the undersigned conducted a review of the sufficiency of the Plaintiff's Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B). In a Supplemental Report and Recommendation entered February 6, 2008, the undersigned recommended that all of Plaintiff's claims in the Complaint be dismissed except for Plaintiff's claim in count two of unconstitutional conditions of confinement with respect to the adequacy of the food provided to him at LCF and his claims in count three concerning Defendant Underwood. Plaintiff objected to the recommendation. In an Order entered February 28, 2008, United States District Judge Friot adopted the recommendation and referred the matter again to the undersigned Magistrate Judge for initial proceedings.

As directed by the undersigned in the Order entered March 3, 2008, Defendants have caused the filing of a special report. Defendants Miller, Fry, Mead, Hancock, Halverson, Carns, and Underwood ("Defendants") also moved to dismiss or alternatively for summary judgment with respect to Plaintiff's remaining claims. Plaintiff has responded to this dispositive motion, and the motion is now at issue. For the following reasons, it is recommended that the Motion for Summary Judgment be granted and that judgment issue in favor of Defendants on Plaintiff's remaining claims in counts two and three based on Plaintiff's failure to exhaust administrative remedies.

I. Standard of Review

Defendants have raised the affirmative defense of Plaintiff's failure to exhaust administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), and have attached materials outside the pleadings in support of their

affirmative defense. See Jones v. Bock, ___ U.S. ___, 127 S.Ct. 910, 921 (2007)(failure to exhaust administrative remedies is an affirmative defense in prisoner civil rights cases). Accordingly, with respect to the issue of exhaustion of administrative remedies, the Defendants' motion alternatively seeking dismissal of the action or summary judgment is considered a motion for summary judgment pursuant to Fed. R. Civ. P. 56.

Summary judgment may be granted only where the pleadings and any supporting documentary materials "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the court reviews the evidence and inferences drawn from the record in the light most favorable to the nonmoving party. Jiron v. City of Lakewood, 392 F.3d 410, 414 (10th Cir. 2004). A dispute is "genuine" if a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When an affirmative defense is asserted in a motion for summary judgment, the "defendant making such a motion must demonstrate that no disputed material fact exists regarding the affirmative defense asserted. If the defendant meets this initial burden, the plaintiff must then demonstrate with specificity the existence of a disputed material fact. If the plaintiff fails to make such a showing, the affirmative defense bars his claim, and the defendant is then entitled to summary judgment as a matter of law." Hutchinson v. Pfeil, 105 F.3d 562, 564 (10th Cir. 1997). "Material facts" are "facts which might affect the outcome of the suit under the governing law." Id. Additionally, if the moving party demonstrates an

absence of evidence regarding an issue on which the nonmoving party will bear the burden of proof at trial, the nonmoving party can defeat summary judgment only by designating with evidence outside of the pleadings "specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A special report[1] is treated as an affidavit, and the plaintiff's complaint is treated as an affidavit as well if it alleges facts based on the plaintiff's personal knowledge and has been sworn under penalty of perjury. Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir. 1991).

II. Plaintiff's Remaining Claims

The remaining claims before the Court are set forth in counts two and three of Plaintiff's Complaint. In count two, Plaintiff alleges that Defendant Hancock, who is identified as the LCF Food Supervisor, "is serving undercooked turkey and chicken meat .... Baked chicken [is] served with blood still on the bone and meat pink not done .... Even a little kid would starve with what they serve and thats [sic] very little maybe two maybe three bites of the vegetables and the meat is undercooked because Mr. Hancock only lets the meat just stay in long enough to heat up. This food is not worth eating." "Most of this food at L. C. F. makes me sick ... I get diarrhea bad, and my stomach hurts real bad ... and the diets they serve is [sic] mainly beans which hurts my ulcers ...."

In count three, Plaintiff alleges that Defendant "Underwood has stopped my mail

---

[1] In Martinez v. Aaron, 570 F.3d 317 (10th Cir. 1978), the Tenth Circuit Court of Appeals established guidelines for the filing of a special report by the appropriate prison or jail authorities elucidating the factual background and subject matter of prisoners' civil rights complaints.

going to the Warden and stopped all request to staffs going to the chow hall.... Mr. Underwood and other workers here have let every inmate know I am in on a sex offense trying to get me killed." In a supporting brief attached to the Complaint, Plaintiff alleges that Defendant "Underwood has repeatedly stopped letters to my mother and to attorneies [sic]. He has also intercepted request to staffs to the Warden, the major and to the Chow Hall."

III. Exhaustion of Administrative Remedies

In their dispositive motion, Defendants assert as a material, undisputed fact that Plaintiff did not exhaust available administrative remedies concerning his remaining claims. The PLRA, enacted in 1996, directs that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This provision has been interpreted by the Supreme Court to apply "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Moreover, exhaustion of administrative remedies under the PLRA is required for all inmates seeking relief in federal district court regardless of the type of relief available under the institutional administrative procedure. Booth v. Churner, 532 U.S. 731, 741 (2001). The PLRA's administrative exhaustion requirement is satisfied if the inmate complies with the prison's grievance procedures, and "substantial compliance is insufficient." Fields v. Okla. State Penitentiary, 511 F.3d 1109,

1112 (10th Cir. 2007).. The PLRA does not impose a "total exhaustion rule," and courts may therefore proceed with exhausted claims while dismissing claims that have not been exhausted. Id. at 923-926.

The Oklahoma Department of Corrections ("DOC") has a well-established multi-step grievance procedure that all inmates are required to follow with respect to their grievances. The policy requires inmates to first present a Request to Staff to the applicable staff member of the facility in an effort to resolve the inmate's complaint. Special Report, Ex. 8 (DOC Policy No. OP-090124, "Inmate/Offender Grievance Process"). If the inmate does not receive a response within 30 days of submission, the inmate may file a grievance to the administrative reviewing authority along with evidence of submitting the Request to Staff to the proper staff member. This grievance may only assert the issue of the lack of response to the Request to Staff. Id.

In the second step of the grievance process, if an inmate receives an unsatisfactory response to the Request to Staff, the inmate may submit a grievance to the facility's administrative reviewing authority. Id. The reviewing authority will respond to the grievance and return it to the inmate within 15 working days of the receipt of the grievance, unless the inmate is notified that the due date for the response has been extended for up to 15 days. Id. If the inmate does not receive a response to the grievance within 30 days of submission, the inmate may send a grievance to DOC's administrative review authority or chief medical officer, as appropriate, with evidence of submitting the grievance to the facility's reviewing authority. Id. The grievance submitted to DOC's administrative review authority may assert

only that the inmate's grievance was not answered. Id.

In the third step of the grievance process, the inmate who receives an unsatisfactory response to a grievance may appeal to DOC's administrative review authority or chief medical officer within 15 days of receipt of the facility reviewing authority's response. The inmate must attach copies of the Request to Staff form with response and the grievance and response from the reviewing authority. The policy also provides for tracking grievances by the reviewing authorities and correctional health services administrators, including grievances returned unanswered for any reason. Id.

In support of their Motion for Summary Judgment, Defendants rely on the affidavit of the LCF grievance coordinator contained in the special report. In this affidavit bearing a notarized signature and dated April 1, 2008, the LCF grievance coordinator avers that he has searched LCF's inmate grievance records, that Plaintiff has not submitted a grievance at LCF since August 2006, and that Plaintiff has not submitted a grievance concerning the issues raised in his Complaint. Special Report, Ex. 3 (Affidavit of Ralph Ford, Grievance Coordinator). Defendants have also relied on the affidavit of Ms. Debbie Morton, an official of DOC's administrative review authority, bearing the date of May 8, 2008. In this affidavit, Ms. Morton avers that she reviewed DOC's inmate grievance records and that Plaintiff has submitted only one grievance in the form of a letter to DOC's administrative review authority. Ms. Morton further avers that the letter was returned to Plaintiff "because it was not properly filed and inappropriate language and threats was [sic] utilized in filing his correspondence." Special Report, Ex.5. Attached to the special report is a photocopy of a

letter authored by Plaintiff and addressed to Ms. Morton with a stamp indicating it was received by DOC on November 13, 2007. Special Report, Ex. 6. In this letter, Plaintiff complains, among other things, of "the crappy food they serve here." Id. The letter contains several impertinent, abusive, and threatening statements directed toward Ms. Morton and DOC in general. Plaintiff admits in his unverified responsive pleading that he submitted this letter to Ms. Morton in her capacity as DOC's administrative review authority. Plaintiff's assertion in his responsive pleading that this letter was not threatening is unavailing. The correspondence obviously failed to comply with the provisions of the administrative grievance policy established by DOC for Oklahoma inmates because it did not assert an appeal of the responses of LCF officials in the first two steps of the administrative grievance process or provide documentation of those responses.

In Plaintiff's Complaint, Plaintiff responded to the query on the form pleading concerning his exhaustion of administrative remedies by asserting that he had "sought relief and have [sic] no answer and when filing a grievance I get an answer back saying warning continued abuse of the grievance process will result in sanctions. I can't even write to D. O. C. Director Justin Jones without getting a grievance warning on the letter, even when it is a complaint." Complaint, at 5. With respect to the issue of exhaustion of administrative remedies,[2] Plaintiff contends in his unverified responsive pleading that he filled out "several

---

[2]Plaintiff's responsive pleading also addresses other issues not relevant to the preeminent issue of exhaustion, such as the validity of his conviction and the merits of his claims. Plaintiff makes other generalized complaints that indicate personal differences with correctional staff members that have no relevance to the issue of exhaustion.

grievances." However, Plaintiff provides no information in either his Complaint or his responsive pleading concerning the issues presented in the alleged grievances, the staff member(s) to whom the alleged grievances were submitted, or the dates the alleged grievances were submitted. Plaintiff contends only that he gave the grievances to an unidentified correctional officer, and he surmises that the grievances "were probably lost or put in the trash because this facility does not want a record of the complaints coming from House 7 or the P.C. units." However, even though Plaintiff was advised in the Order entered June 2, 2008, of his obligations under Fed. R. Civ. P. 56 in responding to the Defendants' dispositive motion, Plaintiff provides no evidentiary support, other than his Complaint, for his assertion that he submitted grievances to unidentified LCF officials. Moreover, his speculation that LCF officials deliberately discarded his grievances is not sufficient to defeat Defendants' Motion for Summary Judgment. See Rice v. United States, 166 F.3d 1088, 1091-1092 (10th Cir. 1999)(evidence must be based on more than mere speculation, conjecture, or surmise to defeat motion for summary judgment). The Complaint itself does not contain sufficient information with respect to the issue of exhaustion to show a material issue of disputed fact with respect to the Defendants' Motion for Summary Judgment and the evidence presented by Defendants in support of their dispositive motion.

Even if Plaintiff could show that he submitted grievances that were lost or disposed of by LCF officials, he has not shown that he followed the course of action contained in DOC's grievance policy for grieving a failure to respond to his grievances. See Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002)("An inmate who begins the grievance process

but does not complete it is barred from pursuing a [federal] claim under the PLRA for failure to exhaust his administrative remedies."). Plaintiff's assertion that following the administrative grievance procedure would be useless because he received warnings with grievances responses not to abuse the grievance process does not excuse the exhaustion requirement. Id. ("Even where the 'available' remedies would appear to be futile at providing the kind of remedy sought, the prisoner must exhaust the administrative remedies available."). Even assuming the truth of Plaintiff's assertion that he received warnings about sanctions for abusing the grievance process, Plaintiff does not show that these warnings rendered the grievance process unavailable to him. The purported failure to LCF officials to timely respond to his grievances does not justify his failure to pursue the remaining steps of the administrative grievance process given the alternative steps established in the grievance procedure for grieving a prison official's failure to timely respond to a Request to Staff or grievance.

With respect to Plaintiff's claims in count three against Defendant Underwood, Plaintiff asserts in his unverified responsive pleading that he has "sent several Request to Staffs to Mr. Underwood, the Warden, the major, and the House Sgt. on this matter but have not and did not receive any response. I also sent grievances on these issues as well but received no response in any form." Plaintiff provides no evidentiary support for his contentions, and he again fails to provide pertinent information concerning the dates on which he submitted the grievances, nor does he assert that he followed the course of action provided in DOC's grievance policy of grieving the failure of LCF correctional officers to

respond to his grievances. Plaintiff also refers in his responsive pleading to an "institutional shakedown" at LCF in April 2008, "in which all [his] request to staffs and medical request [sic] were thrown in the trash." Plaintiff does not describe the purportedly destroyed administrative grievances with sufficient detail to show that he has exhausted the remaining claims asserted in counts two and three of the Complaint or show how he has been prevented from exhausting the remaining claims by the actions of LCF correctional officials, given the DOC administrative grievance policy's procedure for grieving the failure to respond to a Request to Staff or grievance. Accordingly, there is no material issue of fact for trial with respect to the issue of Plaintiff's exhaustion of administrative remedies concerning the remaining claims in counts two and three of the Complaint, and Defendants are entitled to summary judgment due to Plaintiff's failure to exhaust administrative remedies.

## RECOMMENDATION

Based on the foregoing findings, it is recommended that Defendants' Motion for Summary Judgment (Doc. # 45) be GRANTED and that judgment issue in favor of Defendants and against the Plaintiff.[3] Plaintiff is advised of his right to file an objection to this Second Supplemental Report and Recommendation with the Clerk of this Court by July

---

[3] Although the failure to exhaust administrative remedies generally warrants a dismissal without prejudice, the Tenth Circuit Court of Appeals has recognized in a recent unpublished decision that a "substantively and procedurally valid" motion for summary judgment on the issue of exhaustion of administrative remedies warrants the grant of summary judgment in the favor of the moving party pursuant to Fed. R. Civ. P. 56. See Stone v. Albert, 257 Fed. Appx. 96, 2007 WL 4230702, at * 4 (10th Cir. Dec. 3, 2007)(unpublished op.).
11

9th         , 2008, in accordance with 28 U.S.C. § 636 and LCvR 72.1.  The Plaintiff is further advised that failure to make timely objection to this Second Supplemental Report and Recommendation waives his right to appellate review of both factual and legal issues contained herein.  <u>Moore v. United States of America</u>, 950 F.2d 656 (10th Cir. 1991).

This Second Supplemental Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and all pending motions not specifically addressed herein, including the motions in Docs. # 40, 42, and 43, are denied.

ENTERED this      19th       day of        June        , 2008.

*/s/ Gary M. Purcell*
GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE